**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

FirePond, Inc.,

Plaintiff,

v.

Joe Fuca,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-498 ADM/AJB

---

Allen W. Hinderaker, Esq., and Jodi L. Johnson, Esq., Hinshaw & Culbertson, Minneapolis, Minnesota, appeared for and on behalf of the Plaintiff.

David T. Schultz, Esq., Halleland, Lewis, Nilan, Sipkins & Johnson, P.A., Minneapolis, Minnesota, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

Plaintiff FirePond, Inc. ("FirePond") alleges Defendant Joe Fuca ("Fuca") made false representations so as to render a severance agreement null and void. On June 9, 2000, the undersigned United States District Judge heard Defendant's motion to dismiss for (1) lack of personal jurisdiction, (2) failure to state a claim, and (3) forum non conveniens [Doc. No. 2]. For the reasons set forth below, Defendant's motion is granted.

## II. BACKGROUND

FirePond is a Delaware software design company headquartered in Massachusetts and with offices in Minnesota. See Compl. ¶ 2. FirePond is recognized as a leader in the field of interactive selling systems. See id. ¶ 6.

FirePond hired Fuca in August 1998 as Vice President of Regional Sales. Fuca entered into an August 24, 1998 Incentive Stock Option Agreement ("First Stock Option Agreement").

FILED 8 10 00
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD 8-10-00
DEPUTY CLERK

On June 16, 1999, Fuca entered into another Stock Option Agreement ("Second Stock Option Agreement").

The two stock option agreements granted Fuca options to purchase FirePond common stock and allowed FirePond to repurchase any such shares purchased by Fuca, if he

> directly or indirectly competes with [FirePond], or is employed by or provides consulting services to a competitor of [FirePond] or if [FirePond] becomes aware that [Fuca] intends to engage in such competition . . . or [if he breaches] any of the terms of the Non-Competition Agreement.

Compl., Exs. D & E. Firepond's repurchase option expired on February 9, 2000. See Carretta Aff. ¶ 6. Both Stock Option Agreements contain forum selection clauses specifying Minnesota as having exclusive jurisdiction over any dispute between the parties.

FirePond terminated Fuca on January 10, 2000. The parties executed a severance package on January 18, 2000, after Fuca assured FirePond he had no intention of seeking employment with any FirePond competitor. See Compl. ¶¶ 28-36. The Severance Agreement specifies Massachusetts as the exclusive forum for disputes relating to the severance package. See Compl., Ex. F.

FirePond alleges that Fuca's assurances were false because Fuca was interviewing with Selectica, Inc., a direct competitor of FirePond. See Compl. ¶¶ 28-36. Pursuant to the severance package, FirePond agreed to (1) accelerate the vesting of some of Fuca's options under the Stock Option Agreements and (2) pay Fuca's salary from January 10, 2000 until May 10, 2000. See id. ¶ 13.

## III. DISCUSSION

FirePond need only submit evidence that, when viewed in the light most favorable to FirePond, establishes a prima facie case of personal jurisdiction. See Aero Sys. Eng'g, Inc. v. Opron, Inc., 21 F. Supp.2d 990, 995 (D. Minn. 1998). Parties may consent to waive the personal jurisdiction requirement. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985); Ytuarte v. Gruner + Jahr Printing & Publ'g Co., 935 F.2d 971, 972 (8th Cir. 1991). The United States Supreme Court has noted that,

> because the personal jurisdiction requirement is a waivable right, there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court." [P]arties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. Where such forum-selection provisions have been obtained through "freely negotiated" agreements and are not "unreasonable and unjust," their enforcement does not offend due process.

Id. (citations omitted) (quoting Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). In the instant case, there are two exclusive forum selection clauses in two separate agreements between the parties: (1) the Stock Option Agreements specify Minnesota and (2) the Severance Agreement specifies Massachusetts.

FirePond argues that the Severance Agreement's forum selection clause is unenforceable because it is "void ab initio on the basis of fraud in the inducement." Pl.'s Mem. Opp. at 7-8. FirePond concludes that "the only forum selection clauses governing this action are found in the Stock Option Agreements." Id. at 8. Even if the Severance Agreement were valid, FirePond continues, "Fuca would have consented to both jurisdictions." Id.

On the other hand, Fuca contends that the forum selection clauses conflict because they

both purport to be exclusive. See Def.'s Mem. Supp. at 10. Fuca reasons that the conflict renders both the Minnesota and Massachusetts forum clauses invalid, compelling a specific personal jurisdiction analysis. See id. The parties' arguments are unpersuasive for a number of reasons.

First, while the Stock Option Agreements have some relevance, the Severance Agreement is central to the parties' dispute. The Severance Agreement modified Fuca's vested options originally granted under the Stock Option Agreements.[1] When he was terminated on January 10, 2000, Fuca's "option rights to 18,750 pre-split shares of FirePond common stock had vested under the [First] Stock Option Agreement . . . ." Compl. ¶ 11. "[N]one of the option rights under the [Second] Stock Option Agreement . . . were vested."

The Severance Agreement explicitly amended the two Stock Option Agreements. See Compl., Ex. D, Ex. 1 at ¶ 6A-C. The amendment accelerated "the vesting of 6,250 pre-split options of FirePond common stock under the [First] Stock Option Agreement . . . ." Id. ¶ 14. The amendment also accelerated the vesting of 6,250 pre-split options of FirePond under the Second Stock Option Agreement. See id.

FirePond's common stock "had a reverse split on a 3 for 2 basis effective January 4, 2000." Id. ¶ 15. In addition to the 12,500 shares vested through acceleration, Fuca also received acceleration of 4,167 shares under each stock option agreement, "the total shares accelerated being 8,334." Id. The bottom-line is that, pursuant to the Severance Agreement's amendment clause, Fuca received 20,834 post-split shares that had not otherwise vested under the First and

[1] The Severance Agreement is Exhibit 1 to the "General Release" executed by the parties. See Compl., Ex. F.

Second Stock Option Agreements.

Additionally, the alleged misrepresentations pertain almost exclusively to the circumstances surrounding the negotiation and execution of the Severance Agreement. FirePond alleges (1) Fuca "expressly stated to FirePond that he had no intention to be employed by a FirePond competitor and that he was not and would not seek employment with or be employed by a FirePond competitor;" (2) Fuca's statements were false because at the time of the statements, Fuca "was seeking employment with Selectica, Inc. -- a direct competitor of FirePond;" and (3) FirePond entered into the Severance Agreement with Fuca in reliance upon his false statements and misrepresentations." Compl. ¶¶ 18-20. In short, according to FirePond, the parties executed a severance package, on January 18, 2000, after Fuca assured FirePond he had no intention of seeking employment with any FirePond competitor.

Finally, the relief sought by FirePond also revolves around the terms of the Severance Agreement. In its prayer for relief, FirePond requests judgment ordering that: (1) FirePond can repurchase Fuca's 20,834 exercised shares (vested pursuant to the Severance Agreement) at their exercise price; (2) the Severance Agreement is null and void; and (3) Fuca repay $12,500 (the salary payment pursuant to the severance agreement). The primordial nature of the Severance Agreement suggests that the Massachusetts forum selection clause applies to the present dispute.

To nullify both forum selection clauses would undermine the parties intent in amending the Stock Option Agreements and modifying the original forum selection clause. The parties' intent must prevail. See Opus Corp. v. International Bus. Mach. Corp., 141 F.3d 1261, 1265 (8th Cir. 1998). Additionally, the court is obligated "to avoid a contract interpretation that would render a provision of the contract meaningless." Opus Corp., 141 F.3d at 1266 (citing Cherogsky

v. Crosstown Bell, Inc., 463 N.W.2d 522, 526 (Minn. 1990)).

Under the present facts, the Massachusetts forum selection clause in the Severance Agreement supercedes the forum selection clause contained in the Stock Option Agreements. This Court's exercise of personal jurisdiction over Fuca is improper because the parties consented to personal jurisdiction in Massachusetts. The Court does not reach the motion to dismiss for improper venue or failure to state a claim because the Court does not have personal jurisdiction over the Defendant.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss for lack of personal jurisdiction [Doc. No. 2] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

Ann D. Montgomery

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: August 10, 2000

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd